The court incorporates by reference in this paragraph and adopts as
the findings and orders of this court the document set forth below.
This document was signed electronically on August 26, 2009, which
may be different from its entry on the record.

IT IS SO ORDERED.



_____
**Arthur I. Harris**
**United States Bankruptcy Judge**

Dated: August 26, 2009

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re:                              )      Case No. 08-13577
                                    )
ROBERT E. BOYD, JR.,                )      Chapter. 13
                                    )
        Debtor.                     )      Judge Arthur I. Harris

MEMORANDUM OF OPINION

This Chapter 13 case is currently before the Court on confirmation of the

debtor's second amended plan of reorganization and the trustee's objection.  The

primary issue is whether this above-median income debtor is devoting all of his

"projected disposable income" to his unsecured creditors in compliance with

11 U.S.C. § 1325(b).  More specifically, the Court must choose between two

competing schools of thought in interpreting section 1325(b), as amended by

Congress in 2005[1] – the forward-looking approach and the mechanical approach.

_____

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
(BAPCPA), Pub. L. No. 109-8, 119 Stat. 23, became effective October 17, 2005.

The Court must also determine whether the secured claim of the IRS qualifies as debt "scheduled as contractually due" under 11 U.S.C. § 707(b)(2)(A)(iii). For the reasons that follow, the Court adopts the mechanical approach in determining the debtor's projected disposable income under section 1325(b) and sustains the trustee's objection to confirmation. Given the debtor's expressed desire to convert his case to Chapter 7 should plan confirmation be denied, the debtor shall have seven calendar days to file a notice of conversion to Chapter 7 pursuant to 11 U.S.C. § 1307(a) and Fed. R. Bankr. P. 1017(f)(3). Absent the timely filing of a notice of conversion, the Court will issue a separate order dismissing the debtor's Chapter 13 case for cause under 11 U.S.C. § 1307(c) for lack of a confirmable plan.

## JURISDICTION

A confirmation hearing pursuant to 11 U.S.C. § 1324 is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 13, 2008, the debtor, Robert E. Boyd, Jr., filed his Chapter 13 petition. According to the debtor's schedules and statements, the debtor is

divorced with no dependents. As of the petition date, the debtor was employed as a machinist with Ford Motor Company, where he had been employed for 41 years. He reported gross wages of $84,803 for calendar year 2006 and $99,635 for calendar year 2007.

The debtor's initial Official Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"), listed a current monthly income for section 1325(b)(3) of $9,510.15 on Line 20, reflecting an annualized current monthly income of $114,121.80 on Line 21. The debtor's monthly disposable income under section 1325(b)(2) was $3,266.14 on Line 59.

On June 10, 2008, the debtor filed an amended Form 22C that included, among other changes, an additional deduction on Line 48a of $2,927.76 for monthly payment on the secured claim of the IRS, and a new monthly disposable income of -$135.33 on Line 59.

On June 10, 2008, the debtor also filed his initial Chapter 13 plan. The debtor's initial plan proposed monthly payments to the trustee of $225, including $37 per month to the IRS for its secured claim, which the debtor valued at $1,900. Unsecured creditors, whose claims the debtor estimated at $223,830, would receive a pro-rate share of $600. The plan also proposed to pay priority claims of $2,500

3

to debtor's counsel, $2,495.59 to the IRS, and $3,422.15 to the Ohio Department of Taxation.

On June 10, 2008, the IRS filed a proof of claim, which included a secured claim in the amount of $151,439.98. This large tax debt was apparently the result of the debtor's decision about ten years ago to effectively stop paying income taxes, which continued for a period of several years.

On June 26, 2008, the Chapter 13 trustee filed an objection to confirmation of the debtor's plan. On July 23, 2008, the IRS also filed an objection to confirmation asserting that the secured portion of its claim is secured in fact for at least $13,751, not $1,900, as indicated in the debtor's initial plan.

On August 7, 2008, the debtor filed an amended plan to address the objection of the IRS. The August 7, 2008, plan proposed monthly payments to the trustee of $442, including $226 per month to the IRS for its secured claim, which the debtor now listed at $13,751. Unsecured creditors, whose claims the debtor estimated at $223,830, would receive a pro-rate share of $750. The plan also proposed to pay priority claims of $2,500 to debtor's counsel, $2,495.59 to the IRS, and $3,422.15 to the Ohio Department of Taxation.

On August 12, 2008, the debtor filed a second amended Form 22C showing a new monthly disposable income of $6.67 on Line 59, but retaining the large

4

deduction of $2,927.76 for the secured claim of the IRS on Line 48a. On the same day, the debtor also filed amended Schedules I and J. These schedules indicated average monthly income of $3,596.19, average monthly expenses of $3,154.54, and monthly net income of $441.65.

On October 31, 2008, the debtor filed a second amended plan. The October 31, 2008, plan proposed monthly payments to the trustee of $585, including $260 per month to the IRS for its secured claim, which the debtor again listed at $13,751. Unsecured creditors, whose claims the debtor estimated at $223,830, would receive a pro-rate share of $2,500, or 1 percent, whichever is greater. The plan also proposed to pay priority claims of $2,500 to debtor's counsel, $9,601.88 to the IRS, and $3,422.15 to the Ohio Department of Taxation.

On December 4, 2008, the Court held an initial hearing on confirmation of the debtor's October 31, 2008, plan and the trustee's objection. The IRS withdrew its objection. The trustee and the debtor requested an evidentiary hearing.

On May 21, 2009, the Court held an evidentiary hearing during which the debtor testified and the Court received exhibits from the debtor and the Chapter 13 trustee.[2] The Court then took the matter under advisement.

---

[2] In closing argument, the trustee argued that the debtor's decision to stop paying income taxes about ten years ago and the resulting problems with the IRS are factors to be considered in making a good faith determination under

5

# DISCUSSION

The primary question before the Court is whether this above-median income debtor is devoting all of his "projected disposable income" to his unsecured creditors in compliance with 11 U.S.C. § 1325(b). More specifically, the Court must choose between two competing schools of thought in interpreting section 1325(b), as amended by BAPCPA – the forward-looking approach and the mechanical approach. The Court must also determine whether the full amount of the secured claim of the IRS qualifies as debt "scheduled as contractually due" under 11 U.S.C. § 707(b)(2)(A)(iii).

The trustee argues that the secured tax debt owed to the IRS and listed on Line 48a of Official Form 22C is not an amount "scheduled as contractually due" to a secured lender and cannot be included as a deduction for debt payment under the means test and on Line 47 of Form 22C. Rather, the secured tax debt can only be included on Line 48 to the extent the debt is secured by personal property of the debtor that is necessary for the debtor's support. The trustee further contends that

---

section 1325(a)(3). The trustee, however, did not raise this argument until closing, creating a question of whether the issue was properly preserved for the Court's consideration. Plus, the IRS has withdrawn its own objection to confirmation, perhaps because it believes that much of the debtor's tax liability is nondischargeable under 11 U.S.C. §§ 523(a)(1)(C) and 1328(a)(2). In any event, the Court need not decide this issue because, as explained below, the Court denies confirmation under section 1325(b).

6

when the proposed deduction on Line 48a for the secured tax debt owed to the IRS is reduced to the amount actually secured by the debtor's personal property, the debtor, an above-median income debtor, is not devoting all of his "projected disposable income" to his unsecured creditors, as calculated using a mechanical approach, in violation of section 1325(b)(1).

The debtor urges the Court to adopt a forward-looking approach to calculate "projected disposable income." Under this approach, the debtor asserts, it is irrelevant whether the secured portion of the IRS claim qualifies as a debt "scheduled as contractually due" because the debtor is devoting all "projected disposable income" to his unsecured creditors *based on his current economic situation*. The debtor's most recent Schedule I, filed on April 14, 2009, and Schedule J, filed on August 12, 2008, show a monthly net income of $377.08. The debtor would have the Court determine his projected disposable income by considering his monthly net income (Schedules I - J), as well as the elimination of his overtime and the likelihood of a further reduction in hours by shifting to a four-day work week.

The Court will first address the narrow question of whether a debt secured by a federal tax lien constitutes a debt "scheduled as contractually due" within the meaning of 11 U.S.C. § 707(b)(2)(A)(iii). The Court will then address the issue of

7

determining the debtor's "projected disposable income" within the meaning of

11 U.S.C. § 1325(b).

## A.  Scheduled as Contractually Due

The statutory provision which underlies the claimed deduction at issue in

this case – the secured tax claim of the IRS – is 11 U.S.C. § 707(b)(2)(A)(iii),

which provides:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of –
>> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under Chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents . . . .

For above median income debtors, Official Form 22C provides the vehicle for

calculating a Chapter 13 debtor's monthly disposable income under

section 1325(b)(2).  Official Form 22C provides in pertinent part:

> **Future payments on secured claims.** For each of your debts that is secured by an interest in property that you own . . . state the Average Monthly Payment . . . .  The Average Monthly Payment is the total of all amounts *scheduled as contractually due* to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. . . .

8

**Other payments on secured claims.** If any of debts listed in Line 47 are secured by . . . property necessary for your support . . . you may include in your deduction 1/60th of any amount (the "cure amount") that you must pay the creditor in addition to the payments listed in Line 47, in order to maintain possession of the property. . . .

Official Form 22C, Lines 47-48 (emphasis added).[3]

Under a plain reading of the statute, "scheduled as contractually due" means that the claim must be based on a contract. This holding is supported by case law from those courts that have considered the meaning of "scheduled as contractually due" in the context of whether a debtor may deduct amounts payable to secured creditors when the debtor intends to surrender the property securing those debts.[4] Courts addressing this issue generally agree that a debt is "scheduled as contractually due" when a debtor is legally obligated under terms of a contract. *See In re Haar*, 360 B.R. 759, 764 (Bankr. N.D. Ohio 2007) (Speer, J.) (finding a debt "contractually due" when a debtor is "contractually obligated to make

---

[3] The Chapter 7 form, Official Form 22A, contains similar language.

[4] *Compare*, *e.g.*, *Morse v. Rudler (In re Rudler)*, No. 08-9007, 2008 WL 2385469 (1st Cir. Aug. 5, 2009) (debts "scheduled as contractually due" include payments due for property Chapter 7 debtor plans to surrender) and *In re Thomas*, 395 B.R. 914, 920 (B.A.P. 6th Cir. 2008) (same for Chapter 13 debtor), *with, e.g., In re Harris*, 353 B.R. 304, 310 (Bankr. E.D. Okla. 2006) (debts "scheduled as contractually due" do not include payments due for property Chapter 7 debtor plans to surrender). This split in the case law is irrelevant to this Court's conclusion that debts secured by tax liens are never *contractually* due.

9

payments").

The IRS claim listed on Form 22C is secured by a tax lien that is not based on a contractual obligation. Thus, the IRS claim is a nonconsensual secured claim, and the debtor may not claim any portion of this debt as an amount "scheduled as contractually due" on Line 47 of Form 22C. *See In re Kucera*, No. 08-17304, 2009 WL 691000, at *4 (Bankr. D. Mass. March 12, 2009) (finding that "voluntary liens can be deducted but involuntary liens cannot"); *see generally United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989) (noting the difference between consensual and nonconsensual secured claims in the context of interpreting 11 U.S.C. § 506(b), and characterizing a tax lien as a nonconsensual claim). Therefore, the trustee is correct in asserting that the only portion of the IRS claim that may be included on Form 22C is the portion secured by the personal property of the debtor necessary for the debtor's support, which may be listed on Line 48 of Form 22C.[5]

The trustee stipulates that the amount secured by the debtor's personal property is $13,751.00. Expressed as a monthly amount for purposes of the means test, the debtor must pay the IRS on its secured tax claim, including interest, about

_____

[5] Although Line 48 of Official Form 22C refers only to those debts listed on Line 47, "If any of debts listed in Line 47 . . .", this reading is not reflected in 11 U.S.C. § 707(b)(2)(A)(iii), which governs the application of the "means test."

10

$260 per month, not the $2,927.76 listed on Line 48a. When this $260 figure is substituted in Form 22C, the debtor's monthly disposable income becomes $2,674.43. The debtor's most recent Chapter 13 plan indicates a monthly payment to the trustee of $585, with general unsecured creditors receiving a pro rata share of $2,500, or 1 percent, whichever is greater.[6] If, as requested by the trustee, the Court employs a mechanical approach to determine "projected disposable income," the debtor is not devoting all of his projected disposable income to his unsecured creditors in violation of 11 U.S.C. § 1325(b)(1), and the plan cannot be confirmed.

### B. Projected Disposable Income

11 U.S.C. § 1325 provides in pertinent part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
. . . .
(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan. (emphasis added)

"Projected disposable income" is not defined by the current version of the

_____

[6] In closing argument the debtor offered to pay a slightly higher payout to his unsecured creditors; however, this additional increase is not enough to alter the Court's analysis under section 1325(b).

11

Bankruptcy Code, nor is the term defined by any previous version of the Code. Until BAPCPA became effective in 2005, "projected disposable income" was determined by mathematically projecting a debtor's "disposable income" over the number of months in the applicable commitment period.  *See In re Petro*, 395 B.R. 369, 373-74 (B.A.P 6th Cir. 2008) (discussing pre-BAPCPA calculations); *In re Kolb*, 366 B.R. 802, 809 (Bankr. S.D. Ohio 2007) (recalling that pre-BAPCPA disposable income was "applied directly as 'projected disposable income' over the term of a Chapter 13 plan"); *but see Nowlin v. Peake (In re Nowlin)*, __F.3d__, __ n.9, No. 08-20066, 2009 WL 2105356 (5th Cir. July 17, 2009) (noting that, under Fifth Circuit precedent prior to BAPCPA, projection was *usually* accomplished by multiplying the debtor's monthly income by the plan's term).  Pre-BAPCPA, "disposable income" was calculated by subtracting the debtor's monthly expenses (reported on Schedule J) from the debtor's monthly income (reported on Schedule I).  *See In re Petro*, 395 B.R. at 373-74.

BAPCPA changed the definition of  "disposable income" under section 1325(b).  "Disposable income" is now defined by section 1325(b)(2) generally as "current monthly income" less "amounts reasonably necessary to be

12

expended" by the debtor.[7]

The BAPCPA amendments also added a detailed definition of "current monthly income," which is used, in turn, to determine "disposable income."

The term "current monthly income" –

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).  In short, if a debtor files Schedule I, current monthly

_____

[7] The full definition in section 1325(b)(2) contains various exclusions to "current monthly income" and more details regarding "amounts reasonably necessary to be expended."

13

income is the debtor's average monthly income received during the six calendar months preceding the filing of the debtor's bankruptcy case, subject to certain inclusions and exclusions set forth in 11 U.S.C. § 101(10A)(B). If a debtor does not file Schedule I, current monthly income is the debtor's average monthly income received during the six-month period ending on the date on which current income is determined by the court, subject to the same inclusions and exclusions set forth in 11 U.S.C. § 101(10A)(B).[8]

For an above-median income debtor,[9] "amounts reasonably necessary to be expended" are determined in accordance with 11 U.S.C. § 707(b)(2), commonly referred to as the "means test" in the Chapter 7 setting. *See* 11 U.S.C. § 1325(b)(3). The inclusion of the new "disposable income" definition in section 1325(b)(2) has created confusion regarding the proper method to use when calculating a debtor's "projected disposable income" under section 1325(b)(1).

While the Sixth Circuit has yet to decide how an above-median income debtor's "projected disposable income" should be determined after BAPCPA, the issue is currently on direct appeal to the Sixth Circuit in *Darrohn v. Hildebrand (In*

---

[8] The debtor filed his Schedule I on June 10, 2008 (Docket #14).

[9] In the present case, there is apparently no dispute that the debtor's "current monthly income," when multiplied by 12, exceeds the median family income in Ohio for households of one.

14

*re Darrohn*), No. 09-5499 (6th Cir. docketed April 23, 2009). Other circuit courts,

including the Fifth, Seventh, Eighth, Ninth, and Tenth Circuit Courts of Appeals,

have already considered the issue.[10] These courts agree that "disposable income" is

to be calculated in accordance with section 1325(b)(2), but disagree over the

relationship between "disposable income" and "projected disposable income." In

general, two conflicting approaches have emerged from the case law: the

foward-looking approach and the mechanical approach.[11] Except for the Ninth

Circuit, all of the circuit courts that have addressed this issue have adopted a

forward-looking approach. The Ninth Circuit, however, adopted the mechanical

approach in an opinion authored by Senior United States Circuit Judge Eugene

Siler of the Sixth Circuit Court of Appeals, sitting by designation. Our own Sixth

---

[10] *Compare Maney v. Kagenveama* (*In re Kagenveama*), 541 F.3d 868 (9th Cir. 2008) (adopting a mechanical approach to determining projected disposable income), *with Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008) (adopting a forward-looking approach), *cert. denied*, 129 S.Ct. 1630 (2009); *Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269 (10th Cir. 2008) (same), *petition for cert. filed*, 77 U.S.L.W. 3449 (U.S. Feb. 3, 2009) (No. 08-998); *In re Nowlin*, 2009 WL 2105356 at *6 (same); *In re Turner*, __ F.3d __, No. 08-2163, 2009 WL 2136867 (7th Cir. July 20, 2009) (same);

[11] "[O]ne group of courts – the Followers – strains mightily to apply the new test as written; the other courts – the Fixers – reject the mess BAPCPA made of the disposable income test and find license to substitute a different scheme for the one enacted." Kieth M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 467.1 (4th ed. 2009) ("Lundin") at ¶20 (footnotes omitted).

Circuit BAP has also adopted the forward-looking approach. *See In re Petro*,
395 B.R. at 375-77 (declining to follow Judge Siler's mechanical approach in
*Kagenveama*).

Given the apparent trend in favor of the forward-looking approach, an easy
course for this Court to take might be to simply follow the precedent established by
our own Sixth Circuit BAP, if for no reason other than consistency.[12]  On the other
hand, given the direct appeal pending before the Sixth Circuit, the definition of
"projected disposable income" may soon be relegated to an academic question for
courts within the Sixth Circuit.  Therefore, any concern over a lack of consistency

---

[12] In departing from the holding of the Sixth Circuit BAP, the Court notes
that "bankruptcy courts in this circuit have reached conflicting conclusions
regarding the precedential effects of bankruptcy appellate panel decisions." *In re
Terrell*, No. 08-60172, 2009 WL 1586753, at *6 (Bankr. N.D. Ohio Jan. 15, 2009)
(comparing *Signal v. Livingston (In re Livingston)*, 379 B.R. 711, 726 (Bankr.
W.D. Mich. 2007) (holding that BAP decisions are not binding), with *Rhiel v.
OhioHealth Corp. (In re Hunter)*, 380 B.R. 753, 774-75 (Bankr. S.D. Ohio 2008)
(holding that such decisions are binding and providing a thorough discussion of
both lines of authority)).  This Court agrees with those courts holding that BAP
decisions should be considered persuasive authority, but do not have binding
precedential effect like decisions from the U.S. Supreme Court or from the court of
appeals in which the bankruptcy court is located.  *See In re Terrell*, 2009 WL
1586753, at *6 (finding BAP decisions to be persuasive authority); *In re
Livingston*, 379 B.R. at 727 (same); *In re Cormier*, 382 B.R. 377, 409 (Bankr.
W.D. Mich. 2008) (same).  In short, while there may be good policy reasons for
BAP decisions to be binding precedent on all bankruptcy courts within the circuit,
the dual appellate tracks set forth by Congress under 28 U.S.C. § 158 simply
cannot mandate such a result because litigants will always have the option of
appealing to the district court, which is unconstrained by prior BAP precedent.

16

among lower courts within this circuit is likely to be short-lived. Moreover, the question requiring resolution in the current case gives this Court an opportunity to contribute to the ongoing debate and perhaps help to inform those higher courts that will ultimately decide this issue. In any event, because this Court agrees with Judge Siler's conclusion in *Kagenveama* that the mechanical approach provides a better fit with the text of the Bankruptcy Code, the Court will continue to adhere to what is now the minority view until the Sixth Circuit or the U.S. Supreme Court[13] should rule otherwise.

Pursuant to the mechanical approach, adopted by the Ninth Circuit in *Kagenveama*, an above-median income debtor's "projected disposable income" is a debtor's " 'disposable income,' as defined by § 1325(b)(2) ("current monthly income" less "amounts reasonably necessary to be expended" by the debtor), projected over the 'applicable commitment period.' " *In re Kagenveama*, 541 F.3d at 871-72 (9th Cir. 2008); *see In re Kolb*, 366 B.R. 802 (applying the mechanical approach). In adopting this approach, the Ninth Circuit in *Kagenveama* reasoned:

> Section 1325 uses the term "disposable income" in only two places -
> § 1325(b)(1)(B) ("projected disposable income") and § 1325(b)(2) (defining "disposable income"). The substitution of any data not covered by the
> § 1325(b)(2) definition in the "projected disposable income" calculation would render as surplusage the definition of "disposable income" found in

---

[13] *See In re Lanning* (petition for cert. pending) (No. 08-998).

17

§ 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term "disposable income" as used in § 1325(b)(1)(B). "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."

*In re Kagenveama*, 541 F.3d at 872-73 (quoting *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006)). Evidence of the debtor's financial circumstances at the time of confirmation is not considered.

The forward-looking approach, adopted by the Fifth, Seventh, Eighth, and Tenth Circuit Courts of Appeals and the Sixth Circuit BAP, considers a debtor's financial situation at the time of confirmation (Schedules I - J) to determine a debtor's compliance with section 1325(b)(1)(B). *See In re Frederickson*, 545 F.3d at 659 (taking into account "changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses as reported on Schedules I and J"); *In re Lanning*, 545 F.3d 1269, 1278 (same); *In re Nowlin*, 2009 WL2105356, at *6 (same); *In re Turner*, 2009 WL 2136867, at *13 (same); *In re Petro*, 395 B.R. at 377 (same). These courts reject the mechanical approach as inconsistent with the Bankruptcy Code's remedial purpose, and with the purpose of the BAPCPA amendments to section 1325(b). *See In re Petro*, 395 B.R. at 376 ("The mechanical approach ignores the policy behind the amendments to this section of the Bankruptcy Code and the remedial nature of the code, generally.").

18

Other Courts have already written forcefully and at length about the reasons for and against the forward-looking approach and the mechanical approach in interpreting "projected disposable income" under 11 U.S.C. § 1325(b). Rather than repeat these arguments, the Court will simply highlight those arguments the Court has found most persuasive in its decision to adopt the mechanical approach.[14]

    *1. The forward-looking approach renders almost meaningless the very detailed definitions of "current monthly income" and "disposable income" added by BAPCPA.*

Prior to BAPCPA, bankruptcy courts looked to debtors' Schedules I and J to determine whether debtors were devoting all of their projected disposable income under 11 U.S.C. § 1325(b). All of the courts adopting the forward-looking approach now say that a debtor's Schedules I and J should trump whatever rigid formulaic projection should come from the statutory definition of "disposable income" now contained in section 1325(b)(2) as a result of BAPCPA. Thus, despite very detailed definitions from Congress under BAPCPA, bankruptcy courts applying the forward-looking approach are essentially doing the same exercise they

_____

[14] For an encyclopedic treatment of "projected disposable income" and the relevant case law, *see* Lundin at § 467.1. This Court commends the Lundin treatise's excellent and thorough analysis to any court having to choose between the forward-looking approach and the mechanical approach.

19

were doing prior to BAPCPA, and these very detailed definitions are rendered almost meaningless.  *See In re Kagenveama*, 541 F.3d at 873-74; *In re Kolb*. 366 B.R. at 815-17.

   *2.  By comparison, the textual arguments in favor of the forward-looking approach are much less compelling.*

   Prior to BAPCPA, courts determined "projected disposable income" by mathematically projecting or extrapolating the debtor's disposable income over the life of the plan.  Courts did not look at the disposable income numbers and then adjust them based upon other information – *e.g.*, anticipated raises, less overtime, or changes in expenses – suggesting that such projections were inaccurate or imperfect.  When Congress adopted a more detailed and more backward-looking formula for calculating "current monthly income" and, by definition, "disposable income," it left unchanged the phrase "projected disposable income."  While proponents of the forward-looking approach read the definition of "projected" as "forward-looking," they ignore the equally acceptable mathematical definition of "projected" previously used by bankruptcy courts prior to BAPCPA.  *See In re Berger*, 376 B.R. 42, 47 (Bankr. M.D. Ga. 2007) (discussing dictionary definition of the verb "project" and concluding: "Under the amendments, Congress has directed the Court to extrapolate from a different source - disposable income as calculated in accordance with the means test and reported on Form B22C."); *see*

20

*also In re Kolb*, 366 B.R. at 814 n.17.  This formulaic approach is a much better fit

with the text of section 1325 and does not require bankruptcy courts to unhinge

themselves from the detailed definition of "disposable income" or try and create a

new interpretation of "projected" which Congress left unchanged by BAPCPA.

*See In re Kagenveama*, 541 F.3d at 874 (rejecting argument that disposable income

is merely a starting point for deriving projected disposable income "because no text

in the Bankruptcy Code creates a presumptively correct definition of 'disposable

income' subject to modification based on anticipated changes in income or

expenses");  Lundin § 467.1 at ¶¶32-41.

On the other hand, there is nothing illogical or superfluous in language

requiring that, *as of the effective date of the plan*, the plan provide that all of the

resulting mathematical calculation (*i.e.*, projected disposable income) *to be*

*received in the applicable commitment period . . . will be applied* to make

payments to unsecured creditors.  *See In re Kolb*, 366 B.R. at 818 ("Congress

simply decided upon a new way to calculate disposable income before projecting

that figure into the plan.").

> 3.  *Just as the totality of circumstances test under section 707(b)(3) provides*
> *a backstop for debtors who pass the mechanical means test, the good faith*
> *requirement under section 1325(a)(3) provides a backstop for debtors who,*
> *in reality, can afford to pay more than required under section 1325(b).*

Courts adopting the forward-looking approach typically argue that the

21

mechanical approach is inconsistent with BAPCPA's purpose of requiring an above-median income debtor to devote as much income as possible to his unsecured creditors. *See In re Lanning*, 545 F.3d at 1281 (finding the forward-looking approach consistent with Congress' intent " 'that debtors pay the greatest amount within their capabilities' " (quoting *In re Kibbe*, 361 B.R. 302, 314 (B.A.P. 1st Cir. 2007)); *In re Petro*, 395 B.R. at 374-75 (finding that the intention of the drafters controls, since a literal application of section 1325(b) produces a result incompatible with the purpose of BAPCPA). Specifically, where a debtor has an increase in income postpetition, and can afford to repay his unsecured creditors a greater dividend, he will not be required to do so. *See In re Frederickson*, 545 F.3d at 659.

A similar argument has been raised in the Chapter 7 setting concerning the application of 11 U.S.C. § 707(b)(2)(A) (means test) to determine whether a presumption of abuse exists under 11 U.S.C. § 707(b)(1). Courts addressing this issue have overwhelmingly held that the means test is to be applied mechanically, regardless of the outcome, and without regard to any anticipated change in the debtor's financial status. *See In re Thomas*, 395 B.R. at 920 (collecting cases holding that section 707(b)(2)(A) is mechanical in nature); *accord In re Rudler*, 2008 WL 2385469 at *11 (section 707(b)(2) permits a Chapter 7 debtor to deduct

22

payments on a secured debt even when the debtor plans to surrender the collateral underlying that debt).

The totality of the circumstances test under 11 U.S.C. § 707(b)(3) provides a vehicle for addressing those situations where the mechanical approach of the means test fails to identify debtors for whom the granting of relief would be an abuse of the provisions of Chapter 7. *See Schultz v. United States*, 529 F.3d 343, 348 (6th Cir. 2008) ("Even if the presumption of abuse does not apply . . . BAPCPA empowers a bankruptcy court to consider whether it believes 'the debtor filed the petition in bad faith,' or whether 'the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.' ") (quoting 11 U.S.C. § 707(b)(3)).

Likewise, when a mechanical application of "projected disposable income" indicates that a debtor's plan meets the requirements of section 1325(b), a debtor's plan must still meet the separate "good faith" requirement under section 1325(a)(3) and applicable Sixth Circuit case law interpreting this requirement. *See*, *e.g.*, *In re Barrett*, 964 F.2d 588, 592 (6th Cir. 1992) (adopting "totality of circumstances" test for good faith under section 1325(a)(3)). Two of the factors the court may consider in making a "good faith" determination under section 1325(a)(3) are the debtor's current income and living expenses. *See In re Barrett*, 964 F.2d at 592

23

(listing 12 factors a bankruptcy judge should weigh in determining a debtor's "good faith"). Thus, even when a mechanical application of section 1325(b) underestimates a debtor's true ability to pay creditors, the separate good faith requirement of section 1325(a)(3), as articulated by the Sixth Circuit in *Barrett*, provides a separate test that must be met before a plan can be confirmed. *In re McGillis*, 370 B.R. 720, 753 (Bankr. W.D. Mich. 2007) ("good faith standard of Section 1325(a)(3) still requires the debtor to establish to the court's satisfaction that he is in fact making an honest effort under the circumstances to repay his creditors"). In other words, just as section 707(b)(3) is available to expose those debtors who may pass a mechanical application of the means test when they are actually able to repay a significant portion of their debts out of future earnings, the good faith requirement in section 1325(a)(3) is similarly available to protect creditors in the Chapter 13 setting.

24

*4. The existing provisions of the Bankruptcy Code, combined with the pragmatic approach of Chapter 13 trustees and bankruptcy practitioners, offer viable alternatives for debtors who cannot afford to pay what could be required under section 1325(b) without courts having to deviate from the text of the Bankruptcy Code or make up new definitions of "projected disposable income" unhinged from the detailed definitions added under BAPCPA.*

Just as the separate good faith requirement is available for debtors who can afford to pay more than might be required under section 1325(b), other Code provisions are available for debtors who *cannot* afford to pay what might be required under section 1325(b).   For example, the Bankruptcy Code already provides an alternative for debtors who have special circumstances that justify additional expenses under section 707(b)(2)(B), *see In re Kolb*, 366 B.R. at 805, 817 n.21; Lundin § 467.1 at ¶35, or whose income going forward is less than otherwise suggested by the debtor's historical earnings during the six months preceding the bankruptcy.   *See* 11 U.S.C. § 101(10A)(A)(ii); *In re Dunford*, 408 B.R. 489 (Bankr. N.D. Ill. 2009) (granting debtor's request to use different end date to calculate "current monthly income" pursuant to express language of section 101(10A)(A)(ii))

When the reduction in income occurs before filing, debtors can avoid the problem of their actual disposable income being lower than their "projected disposable income" by not filing Schedule I.  In *Dunford*, the debtor's income had

25

dropped sharply about a month before she filed under Chapter 13, and the debtor

did not have enough income to fund her plan if she had calculated her "current

monthly income" using the normal six calendar months before filing provided

under section 101(10A)(A)(i)). *See Dunford*, 408 B.R. at 491. The problem was

alleviated when the debtor used a revised six month period (three-months

pre-bankruptcy and three months post-bankruptcy) to calculate her "current

monthly income" and, in turn, her "disposable income," under the express

provisions of the Bankruptcy Code. *See* 408 B.R. at 491.

> By not filing Schedule I, a Chapter 13 debtor whose income has changed
> between the six months before the petition and the effective date of the plan
> can control the timing of the CMI calculation to more realistically reflect
> actual income at confirmation. This time-shifting mechanism in the statute
> undermines the logic of the "forward-looking" fix in *Lanning* and
> *Frederickson*.

Lundin § 467.1 at ¶36.

While critics have characterized the mechanical approach to calculating

projected disposable income as rigid, or even Procrustean, the experience of the

undersigned bankruptcy judge suggests that adherence to the text of

section 1325(b) will not result in a parade of horrors. To the contrary, the

experience of this bankruptcy judge has been that Chapter 13 trustees and

bankruptcy practitioners have, with few exceptions, taken a pragmatic approach in

determining whether a debtor's Chapter 13 plan should be confirmed.

26

For example, the requirement under section 1325(b) that debtors devote all of their projected disposable income to payments to unsecured creditors only applies "*[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan*" (emphasis added). Thus, the projected disposable income test is not an absolute requirement in every case. As long as the trustee and unsecured creditors act pragmatically, and object only when debtors can truly afford to pay more to unsecured creditors than their plans otherwise provide, the concerns with the mechanical approach set forth above will not arise.

From this Court's experience, unsecured creditors rarely object to confirmation of Chapter 13 plans, and Chapter 13 trustees apply a pragmatic approach, recognizing that some debtors may not be able to afford to pay what their historical earnings might otherwise suggest. By way of example, in the first three calendar years after BAPCPA, more than 3,200 new Chapter 13 cases were filed and assigned to the undersigned judge. Nevertheless, on only three occasions, including the present case, has this Court been required to make a final determination after the trustee, debtor's counsel, and creditor's counsel were unable to reach agreement on whether debtors were devoting all of their projected

27

disposable income for purposes of confirming a Chapter 13 plan.[15]

Moreover, if a Chapter 13 plan cannot be confirmed despite these provisions and the debtor's case is dismissed, the debtor may still file a new case when the debtor's six-month period for calculating current monthly income is more consistent with the debtor's actual income. Although this result may seem harsh, it is not unreasonable, and, where the outcome required by the text is not absurd, the court is required to enforce the statute according to its terms. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *accord Lamie v. United States Trustee*, 540 U.S. 526, 528 (2004) (finding that a court may not "soften the import of Congress' chosen words even if it believes the words lead to a harsh outcome"). "If the changes imposed by BAPCPA arose from poor policy choices that produced undesirable results, it is up to Congress, not the courts, to amend the statute." *In re Kagenveama*, 541 F.3d at 875 (citing *Lamie v. United States Trustee*, 540 U.S. at 542).

In summary, neither the forward-looking approach nor the mechanical approach is entirely satisfactory. Nevertheless, after reviewing both the statutory

---

[15] The two other cases are *In re Dobrski*, No. 07-18925 (oral bench ruling on June 24, 2008, adopting analysis of Judge Siler in *Kagenveama*), and *In re Ford*, No. 07-19272 (oral bench ruling on June 5, 2008, denying confirmation of plan proposing zero percent to unsecured creditors based upon good faith requirement of section 1325(a)(3)).

28

language and the relevant case law, the Court concludes that the mechanical approach embodied in decisions such as *Kagenveama* and *Kolb* provides a much better fit with the text of the Bankruptcy Code as amended by BAPCPA.

CONCLUSION

For the foregoing reasons, the Court adopts the mechanical approach in determining the debtor's projected disposable income under section 1325(b) and sustains the trustee's objection to confirmation. Given the debtor's expressed desire to convert his case to Chapter 7 should plan confirmation be denied, the debtor shall have seven calendar days to file a notice of conversion to Chapter 7 pursuant to 11 U.S.C. § 1307(a) and Fed. R. Bankr. P. 1017(f)(3). Absent the timely filing of a notice of conversion, the Court will issue a separate order dismissing the debtor's Chapter 13 case for cause under 11 U.S.C. § 1307(c), for lack of a confirmable plan.

IT IS SO ORDERED.

29